THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM CABRERA, Defendant-Appellant.

First District (4th Division)   No. 83—1293

Opinion filed June 20, 1985.—Rehearing denied July 24, 1985.

Steven Clark and Michael J. Pelletier, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Mary Ellen Dienes, and Richard A. Stevens, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

In a jury trial in the circuit court of Cook County, William Cabrera, defendant, was found guilty of murder, burglary, and robbery. He was sentenced to a term of 60 years for murder and to a term of 14 years for burglary and robbery, the sentences to run concurrently. On appeal, defendant argues that (1) he was denied a fair trial and an

impartial jury; (2) the trial court's findings that the arresting officers had probable cause to arrest him is manifestly erroneous; (3) the trial court abused its discretion in giving him extended sentences for the convictions; (4) the 60-year sentence for murder is excessive; and (5) the State failed to prove beyond a reasonable doubt that he had a specific intent to commit a burglary.

We affirm as modified.

The facts reveal that on the night of February 10, 1981, at approximately 11:30 p.m., defendant Cabrera and Ruben Lopez, his accomplice, gained unauthorized entry, through a window, into the offices of the Assyrian National Foundation, located at 1475 West Balmoral Avenue, in Chicago. Once inside the building, defendant stole money from the foundation and killed a man by strangling him and hitting him with a blunt instrument. Before leaving the premises, defendant and Lopez robbed the victim of traveler's checks. Several days later, defendant, with two other persons, went to the Century Mall in Chicago. While there, one of the individuals who accompanied defendant purchased clothes and paid for them with the stolen traveler's checks.

On February 23, 1981, police detectives Sappanos and Keane went to the Century Mall and interviewed Derrick Moore, the owner of the store where the stolen traveler's checks had been used. Moore informed the officers that he remembered the men who had used the checks. Moore viewed police department photographs and identified defendant as one of the persons who was with the individual who bought merchandise with the traveler's checks. Detectives Sappanos and Keane went to defendant's house the next day and arrested him for murder. The officers did not have an arrest warrant. Defendant consented to a search of his house. Prior to trial, defendant moved to quash his arrest and to suppress the evidence recovered, alleging there was no probable cause to arrest him. The trial court denied his motion, finding there was probable cause to arrest defendant.

Defendant argues that he was denied his right to a fair trial and an impartial jury when, after the verdict, the first juror polled by the trial judge indicated possible dissent from the verdict and the trial court failed to inquire as to that dissent. The following colloquy occurred:

"THE COURT: Is it your desire to have the jury polled, Mr. Lyster?

MR. LYSTER: [counsel for defendant]: Yes.

THE COURT: I'm going to ask you this question, and I want you to pay attention to it.

Was this and is this now your verdict, Miss Cancinelli [*sic*]?

MS. CANCINELLI [*sic*] [juror]: Can I say what I have to say, or do I have to give a yes, or no answer?

THE COURT: I want a yes or no answer.

Was this and is this now your verdict?

MS. CANCINELLI [*sic*]: I found in my own person mind—

THE COURT: I said I want a yes or no answer.

Was this and is this now your verdict?

MS. CANCINELLI [*sic*]: Yes."

■ A defendant in a criminal case is guaranteed a trial by an impartial jury. (U.S. Const., amend. VI; Ill. Const. 1970, art. 1, sec. 8; *Irvin v. Dowd* (1961), 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639.) Essential to that guarantee is the requirement that the verdict reached be freely arrived at by each juror. (*Martin v. Morelock* (1863), 32 Ill. 485, 488.) Defendant's right to individually poll jurors after a verdict is one method of safeguarding defendant's right to be tried by an impartial jury. (*People v. DeStefano* (1965), 64 Ill. App. 2d 389, 408, 212 N.E.2d 357, 367.) Defendant argues that *People v. Kellogg* (1979), 77 Ill. 2d 524, 397 N.E.2d 835, and *People ex rel. Paul v. Harvey* (1972), 9 Ill. App. 3d 209, 292 N.E.2d 124, are controlling on the issue of juror dissent. He complains that the holding and reasoning of both cases require a reversal of his murder conviction.

In *Kellogg*, the jurors were polled and each juror was asked, "Was this then and is this now your verdict?" Eleven jurors replied, "Yes." The following colloquy occurred between the court and the remaining juror:

" 'THE CLERK: Susan M. Vesecky, was this then and is this now your verdict?

JUROR VESECKY: Yes. Can I change my vote?

THE COURT: The question is, was this then and is this now your verdict?

JUROR VESECKY: (No response.)

THE COURT: Was this then and is this now your verdict?

JUROR VESECKY: Yes, Sir.' " (77 Ill. 2d 524, 527.)

The court held there was nothing wrong with the double-barrel question used in the colloquy, "Was this then and is this now your verdict"; nevertheless, it held if a juror indicates some hesitancy or ambivalence in his answer, it is the trial judge's duty to ascertain the juror's present intent by affording the juror the opportunity to make an unambiguous reply as to his present state of mind. (77 Ill. 2d 524, 528.) The court reversed defendant's conviction in *Kellogg* because the trial court failed to follow this duty.

In *People ex rel. Paul v. Harvey* (1972), 9 Ill. App. 3d 209, 210, 292 N.E.2d 124, 125-26, the following colloquy occurred at trial between the court and a juror during polling:

" 'THE COURT: Is this and was this your verdict?

JUROR: Well, it wasn't exactly, no.

THE COURT: Did you sign this?

JUROR: Yes, I did.

THE COURT: Then it's your verdict.' "

The court held that the juror indicated possible dissent, and the trial court, therefore, had a duty to inquire as to that dissent. 9 Ill. App. 3d 209, 212, 292 N.E.2d 124.

Defendant's case is distinguishable from *Kellogg* and *Harvey*, because, unlike the jurors in those cases, Ms. Ciancanelli did not indicate ambivalence or hesitancy in her reply. We do not interpret her replies, "Can I say what I have to say or do I have to give a yes, or no answer?" and "I found in my own person mind," as indicating ambivalence or hesitancy in her answer. In *Kellogg* and *Harvey*, it was clear to the reviewing court that the jurors had reservations about their decision. Here, Ms. Ciancanelli never indicated to the trial court that her vote as reached during deliberation did not accurately reflect her decision as to defendant's guilt.

The primary purpose of jury polling is to determine that the jury's verdict accurately reflects each juror's vote as reached during deliberations and that the juror's vote was not the result of force or coercion. (*People v. Williams* (1983), 97 Ill. 2d 252, 307, 454 N.E.2d 220, 246.) A judge must be careful to determine the juror's present intent in the polling. (*People v. Kellogg* (1979), 77 Ill. 2d 524, 529, 397 N.E.2d 835, 838.) It is for the trial court to determine whether a juror has freely assented to the verdict. It not only hears the juror's response, it also observes the juror's demeanor and tone of voice. (77 Ill. 2d 524, 529.) We can only second-guess at this stage on those factors considered by the trial court. We, therefore, conclude that unless it is clear to the reviewing court that a juror indicated possible dissent, we will not reverse on jury dissent grounds. Since Ms. Ciancanelli's response indicated no ambivalence or hesitancy, there was no cause for the judge to further question her as to possible dissent. Thus, we hold the trial court had no duty to inquire as to her possible dissent.

■ Defendant also contends that a statement given by Ms. Ciancanelli two hours after the jurors were dismissed indicates that she wanted to dissent from the verdict and change her vote. A statement which goes to the deliberation process and is taken after the verdict

has been read, and the jury has been polled and discharged, is not admissible (*People v. Preston* (1979), 76 Ill. 2d 274, 288, 391 N.E.2d 359, 366), and therefore not reviewable by this court. Accordingly, after the jurors were discharged, Ms. Ciancanelli's change of mind or claim that she was mistaken or unwilling in her assent to the verdict comes too late. 76 Ill. 2d 274, 288.

■■ Before trial, defendant motioned the court to quash his arrest for lack of probable cause and to suppress the evidence recovered as a consequence of the illegal arrest. He contends the trial court's findings of probable cause to arrest was manifestly erroneous because it was based entirely on defendant's presence with another person who used traveler's checks stolen from the murder victim.

Probable cause to arrest exists where the facts and circumstances known to the police would justify a man of reasonable caution to believe that a crime has been committed by the individual he intends to arrest. (*People v. Miller* (1980), 91 Ill. App. 3d 1031, 1037, 415 N.E.2d 538, 543.) It is something less than evidence necessary to result in conviction. (*People v. Frye* (1983), 113 Ill. App. 3d 853, 859, 447 N.E.2d 1065, 1069.) In determining the existence of probable cause, the courts are concerned with probabilities derived from factual and practical consideration of everyday life by reasonable, prudent men—not legal technicians. *People v. Creach* (1980), 79 Ill. 2d 96, 102, 402 N.E.2d 228, 231.

The ruling of a trial court regarding a motion to suppress will not be overturned unless it is manifestly erroneous. (*People v. Tribett* (1981), 98 Ill. App. 3d 663, 671, 424 N.E.2d 688, 694.) In support of his contention that the trial court erred, defendant cites to *People v. Carnivale* (1975), 61 Ill. 2d 57, 329 N.E.2d 193, *People v. Lumpp* (1983), 113 Ill. App. 3d 694, 447 N.E.2d 963, and *People v. Creach* (1980), 79 Ill. 2d 96, 402 N.E.2d 228. He states that the court in those cases reasoned that probable cause to arrest a person does not arise merely from the presence of that person in the company of another. Even assuming, *arguendo*, that defendant is correct in his reasoning, this case is distinguishable from those cited; here, the arresting officers had more facts available to them than that defendant was merely present with another suspect. In the present case, the officers knew that defendant had been twice convicted of burglary in the past six months. Moreover, they knew defendant's past burglaries had occurred in the same general area as the murder and burglary they were investigating, and that defendant lived in the general area where the murder and burglary occurred.

Defendant was arrested at his home after being identified by a

store owner as one of three individuals who purchased clothes and paid for them with the victim's traveler's checks. The store owner also told the officers that defendant had a large scar on his neck. With this information and what they knew of defendant's past burglaries in the general area where the murder and burglary occurred, the officers went to defendant's house without an arrest warrant and placed him under arrest. Based on this information, we hold the trial court's finding of probable cause was not manifestly erroneous.

■ Defendant complains that he was improperly given an extended sentence for each of the offenses for which he was convicted. He argues that the murder of the victim was not accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.

The trial court may impose an extended term sentence when a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2).) When defendant is convicted of several offenses, he may receive an extended sentence for only the most serious class of offenses. *People v. Jordan* (1984), 103 Ill. 2d 192, 205, 469 N.E.2d 569, 575.

The record indicates the victim's death was caused by strangulation and blows by a blunt instrument. Moreover, the victim's blood was splattered over the interior wall of the building, indicating the blows were vicious. We hold that the trial court correctly found the victim's murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.

■ Defendant correctly argues that the trial court erred in imposing an extended sentence for his burglary and robbery convictions. Burglary and robbery are Class 2 offenses. Thus, both crimes are of a different class than defendant's murder conviction. The trial court was limited to imposing an extended sentence for the murder conviction only. (*People v. Jordan* (1984), 103 Ill. 2d 192, 205, 469 N.E.2d 569.) We therefore reduce defendant's sentence for burglary and robbery to seven years.

■ Defendant next argues that his sentence for the murder conviction was excessive. Determining the appropriate sentence for an offender rests in the sound discretion of the trial court. (*People v. La Pointe* (1982), 88 Ill. 2d 482, 492, 431 N.E.2d 344, 348.) We will not alter the trial court's sentence absent an abuse of discretion. (88 Ill. 2d 482, 492.) Defendant was convicted of murder and had three prior felony convictions. The trial court could have given defendant a sentence of not less than 40 years and not more than 80 years. (Ill. Rev.

Stat. 1981, ch. 38, par. 1005—8—2(a)(1); Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1)(2).) Defendant's sentence was less than the maximum sentence he could have received. We hold the trial court did not abuse its discretion in sentencing defendant to 60 years for the murder conviction.

■■ Lastly, defendant argues that the State failed to prove beyond a reasonable doubt that he had the specific intent to commit burglary. Section 19—1(a) of the Criminal Code (Ill. Rev. Stat. 1981, ch. 38, par. 19—1(a)) provides, in pertinent part, that "[a] person commits burglary when without authority he knowingly enters *** a building *** with intent to commit therein a felony or theft." Proof of an unlawful breaking and entering in the absence of inconsistent circumstances is sufficient to infer the intent to commit a theft. (*People v. Toolate* (1984), 101 Ill. 2d 301, 308, 461 N.E.2d 987, 990.) Intent is a state of mind which can be inferred from surrounding circumstances. (*People v. Richardson* (1984), 104 Ill. 2d 8, 13, 470 N.E.2d 1024, 1026.) Here, defendant confessed that without authorization he entered the building to steal valuables and money. Moreover, testimony revealed he cashed traveler's checks taken from the victim. We hold the evidence and surrounding circumstances were sufficient for the jury to infer the requisite intent.

Accordingly, defendant's convictions for murder, burglary, and robbery are affirmed. His sentence for burglary and robbery is reduced to seven years and is to run concurrently with his 60-year sentence for murder.

Affirmed as modified.

JIGANTI, P.J., and LINN, J., concur.