GARY-WHEATON BANK, as Trustee, *et al.*, Plaintiffs-Appellees, v. THE CITY OF WEST CHICAGO *et al.*, Defendants (Frank Hacker *et al.*, Defendants and Intervenors-Appellants).

Second District   No. 2—89—0506

Opinion filed February 23, 1990.

Peregrine, Stime, Newman, Ritzman & Bruckner, Ltd., of Wheaton (Dale W. Bruckner, of counsel), for appellants.

Grotto & Van Der Molen, of Wheaton (John J. Grotto, of counsel), for appellees.

JUSTICE DUNN delivered the opinion of the court:

Intervenor defendants, Frank Hacker *et al.* (intervenors), appeal from an order of the circuit court of Du Page County granting a declaratory judgment to plaintiffs, Seifert and Sons, Inc. (Seifert), and Gary-Wheaton Bank as trustee. The court declared that defendant, City of West Chicago (City), which is not a party to this appeal, had validly rezoned certain property that plaintiffs owned from agricultural to R-2, a residential classification. Intervenors raise the following contentions on appeal: (1) that the service requirements for protest petitions under section 11—13—14 of the Illinois Municipal

Code (Code) (Ill. Rev. Stat. 1987, ch. 24, par. 11—13—14) are directory, not mandatory; (2) that they substantially complied with the requirements of section 11—13—14; (3) that a City ordinance concerning protest petitions was valid and had the effect of raising the required City council vote for Seifert's zoning application to two-thirds; (4) that Seifert waived the service requirements of section 11—13—14; and (5) that the trial court should have permitted intervenors to correct any deficiencies in their protest petition and allow the matter to be considered again by the City council. We affirm.

Seifert is the beneficial owner of a 30-acre parcel of undeveloped real estate in Du Page County. On May 6, 1988, Seifert filed a petition to have the property annexed to the City and to have the City council change its zoning classification from agricultural to R-2, a residential classification. On August 15, 1988, the City council approved an annexation agreement that was subsequently executed by the City and Seifert. Seifert's rezoning request came up for a vote before the City council on the evening of October 17.

On the afternoon of October 17, intervenors and others who owned land near the Seifert property filed a petition objecting to the rezoning request. Section 11—13—14 of the Code discusses such petitions and states in relevant part as follows:

"In case of a written protest against any proposed amendment of the regulations or districts, signed and acknowledged by the owners of 20% of the frontage proposed to be altered, or by the owners of 20% of the frontage immediately adjoining or across an alley therefrom, or by the owners of 20% of the frontage directly opposite the frontage proposed to be altered, is filed with the clerk of the municipality, the amendment shall not be passed except by a favorable vote of two-thirds of the aldermen or trustees of the municipality then holding office. In such cases, a copy of the written protest shall be served by the protestor or protestors on the applicant for the proposed amendment and a copy upon the applicant's attorney, if any, by certified mail at the address of such applicant and attorney shown in the application for the proposed amendment." Ill. Rev. Stat. 1987, ch. 24, par. 11—13—14.

It is undisputed that the petitioners never served a copy of their protest petition upon Seifert or his attorney. The West Chicago City Code, however, contains a provision similar to section 11—13—14, except that it does not have a service requirement. This provision states in relevant part as follows:

"In case a written protest against any proposed amendment

signed and acknowledged by owners of twenty (20) percent of the frontage proposed to be altered, or by the owners of twenty (20) percent of the frontage directly opposite of the frontage to be altered, is filed with the City Clerk, the amendment cannot be passed except on the favorable vote of two-thirds (2/3) of all members of the City Council." West Chicago, Ill., City Code, §4.14—4.

The mayor of the City, A. Eugene Rennels, presided over the October 17, 1988, council meeting. Mayor Rennels was aware that the protesting petitioners had not complied with the service requirements of section 11—13—14 of the Code. Rennels mentioned at the meeting that this provision conflicts with the aforementioned provision of the West Chicago City Code. He ruled, however, that since the petition complied with the City ordinance, a two-thirds vote would be necessary in the council for approval of the zoning amendment sought by Seifert. The council voted eight to nothing to uphold the mayor's ruling. The council then proceeded to vote on the amendment. Five members voted to approve it, and three members voted to reject it. Mayor Rennels then stated that the amendment failed because it did not receive the required two-thirds vote.

Plaintiffs filed a two-count complaint in the circuit court of Du Page County on November 7, 1988, against the City. They sought specific performance of the annexation agreement in count I and sought a declaratory judgment that the subject property had been validly rezoned in count II. The trial court subsequently granted intervenors, each of whom signed the protest petition, leave to intervene as defendants. On March 13, 1989, the trial court granted partial summary judgment to plaintiffs on count II, ruling that the service requirements of section 11—13—14 of the Code were mandatory and that the City Code provision was unconstitutional. The trial judge ruled that a genuine issue of material fact existed as to whether Seifert had waived compliance with the service requirements of section 11—13—14 and set the case for trial on this issue alone.

The trial commenced on April 13, 1989. Most of the witnesses who were present at the October 17, 1988, City council meeting agreed that when the Seifert zoning request came up for consideration, Mayor Rennels stated there was a conflict between the State statute and City ordinance and the City would probably be sued regardless of which way he ruled. Three witnesses testified that Mayor Rennels then asked Seifert's attorney, John Grotto, whether Seifert had been served with a copy of the protest petition. These witnesses were Seifert, Mayor Rennels, and Bruce Kelsey, the West Chicago

City attorney. Rennels and Seifert testified that Grotto responded by saying, "No." According to Kelsey, Grotto also stated that he agreed with the mayor that the protest petition was not in conformity with the State statute. Six other witnesses stated the mayor directed no questions toward Seifert or his attorney during the meeting, and neither Seifert nor his attorney made any comments during the meeting.

The trial judge ruled that Seifert did not waive his right to be served with a copy of the protest petition. The court entered a declaratory judgment order stating that Seifert's property had been validly rezoned to the R-2 classification and enjoining the City from interfering with Seifert's use of the property within the bounds of that classification. The instant appeal ensued.

■■ Intervenors contend that the service requirement of section 11—13—14 of the Code is directory rather than mandatory. As we have seen, this provision states that "a copy of the written protest shall be served by the protestor or protestors" upon the applicant and the applicant's attorney, if any. (Ill. Rev. Stat. 1987, ch. 24, par. 11—13—14.) Unless the context in which it appears indicates otherwise, use of the word "shall" in a statute generally indicates a mandatory obligation. (*Newkirk v. Bigard* (1985), 109 Ill. 2d 28, 33.) The word "shall" may be construed in a directory sense, however, if it is necessary to do so, in order to carry out the legislature's intent. *In re Application of Rosewell* (1983), 97 Ill. 2d 434, 440.

■ Originally, section 11—13—14 did not contain the language imposing the service requirement upon protesting petitioners. (See Ill. Rev. Stat. 1979, ch. 24, par. 11—13—14.) The last sentence of section 11—13—14 was added in an amendment which became effective in January 1980. (See Pub. Act 81—705, §1, eff. Jan. 1, 1980.) All statutory amendments are presumed to have some purpose. (*People v. Richardson* (1984), 104 Ill. 2d 8, 16.) Construing the service requirements of section 11—13—14 as directory would render the 1980 amendment to that provision meaningless. We therefore determine that those requirements are mandatory and reject intervenors' contention to the contrary. It appears clear that the purpose of this amendment was to enable those applying for zoning changes to have notice of protest petitions so they could investigate the validity and sufficiency of the petitions. This purpose would not be served if the service requirements were construed as directory and could be ignored by protesting petitioners.

In *Treadway v. City of Rockford* (1962), 24 Ill. 2d 488, our supreme court stated that "when a statute prescribes certain steps as conditions to the enactment of an ordinance these steps must be sub-

stantially complied with." (*Treadway*, 24 Ill. 2d at 496.) Relying on the above language, intervenors argue that they substantially complied with section 11—13—14 by submitting a protest petition with far more than the requisite number of signatures.

The service requirements of section 11—13—14 are not conditions to the enactment of an ordinance, but instead are conditions for imposition of a two-thirds vote requirement for approval of zoning amendments. The above language from *Treadway* is therefore inapplicable. Intervenors also incorrectly cite *Mezel v. Mobley* (1960), 21 Ill. 2d 20, and *Village of Park Forest v. County of Will* (1976), 38 Ill. App. 3d 693, as authority for the proposition that substantial compliance with the dictates of section 11—13—14 is sufficient. In both cases, the courts held there had been actual compliance with the requirements of section 11—13—14. See *Mezel*, 21 Ill. 2d at 23; *Village of Park Forest*, 38 Ill. App. 3d at 696.

■ Furthermore, intervenors have not substantially complied with section 11—13—14. This is not a case in which a party was served by some means other than the statutorily prescribed means, for instance, by regular mail instead of certified mail as required by section 11—13—14. The protesting petitioners did not serve Seifert or his attorney with a copy of the petition by any means. Intervenors' substantial compliance argument is entirely without merit.

Intervenors also contend that even if their petition was insufficient under section 11—13—14, it was sufficient under section 4.14—4 of the West Chicago City code and it was therefore proper for the mayor and council to impose a two-thirds vote requirement for passage of the zoning amendment. Seifert argues that the City code provision conflicts with section 11—13—14 with regard to the service requirement, and the City code provision is therefore invalid.

A review of certain provisions of the Code not cited by the parties clearly establishes that Seifert is correct. Section 11—13—14 of the Code states in part as follows:

> "The regulations imposed and the districts created under the authority of this Division 13 may be amended from time to time *by ordinance* after the ordinance establishing them has gone into effect * * *." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 24, par. 11—13—14.)

Division 13, as referred to in this statute, relates to zoning. It is clear from section 11—13—14 that zoning amendments may only be made through an ordinance.

Another provision of the Code deals with the requisites for adoption of an ordinance. That provision states in part as follows:

"The passage of all ordinances for whatever purpose \*\*\* shall require the concurrence of a majority of all members then holding office on the city council, including the mayor, unless otherwise expressly provided by this Code or any other act governing the passage of any ordinance, resolution, or motion; provided that, where the council consists of an odd number of aldermen, the vote of the majority of the aldermen shall be sufficient to pass an ordinance." (Ill. Rev. Stat. 1987, ch. 24, par. 3—11—17.)

Including the mayor, the City council had nine members, making five votes necessary for passage of an ordinance unless otherwise expressly provided by this Code or any other act relating to the passage of any ordinance. In this context, the word "act" is synonymous with State statute. Whenever the Code discusses legislative enactments of municipalities in section 3—11—17 and elsewhere, it refers to ordinances, resolutions, or motions, not acts.

■ Since zoning amendments are ordinances, a majority vote is sufficient for passage unless another part of the Code or another State statute indicates otherwise. Section 11—13—14 of the Code does indicate otherwise but only if the requisites of that provision are met, including service of the petition upon the applicant and his or her attorney, if any. Since section 3—11—17 of the Code only allows for departure from the majority vote requirement if a State statute says otherwise, a municipal enactment cannot form the basis for raising the necessary vote for passage of an ordinance to two-thirds of the City council as intervenors contend. The trial judge correctly concluded that section 4.14—4 of the West Chicago City Code is invalid.

■ Additionally, if there is a conflict between a State statute and a municipal ordinance, the ordinance must give way. (*Village of Mundelein v. Hartnett* (1983), 117 Ill. App. 3d 1011, 1015.) A municipal ordinance adopted under a general grant of power which infringes upon the spirit of State law or is repugnant to the State's general policy is invalid. (*Huszaugh v. City of Oakbrook Terrace* (1968), 41 Ill. 2d 387, 390; *Village of Mundelein*, 117 Ill. App. 3d at 1015.) There is unquestionably a conflict between a State statute and a City ordinance in this case, since the ordinance eliminates one of the requirements for a valid protest petition set forth in section 11—13—14, service of a copy of the petition upon the applicant for a zoning amendment and his or her attorney, if any. Section 4.14—4 of the West Chicago City Code is invalid on this basis as well.

■ Intervenors also contend that the evidence at trial establishes that Seifert waived his right to be served with a copy of the protest

petition by failing to object at the City council meeting. The waiver doctrine has been applied in contexts outside a courtroom setting. (See, *e.g.*, *Sexton v. Smith* (1986), 112 Ill. 2d 187.) Waiver has been defined as an "intentional relinquishment of a known right." (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 499.) Waiver may be express or implied, and it arises from the words or conduct of the party waiving the right. (*Brochu*, 105 Ill. 2d at 499.) A trial court's finding on the issue of waiver will not be disturbed unless it is against the manifest weight of the evidence. *Sexton*, 112 Ill. 2d at 194.

■ Seifert contends the waiver doctrine has no application to the City council proceeding involved here. We need not address the applicability of the waiver doctrine because in either event, we conclude the trial court's determination that Seifert did not waive his right to service is not against the manifest weight of the evidence. There was evidence that Mayor Rennels was well aware of the conflict between section 11—13—14 and the City code provision at the time of the council meeting, and there was no need for Seifert or his attorney to raise this issue before the council. There was also testimony that the mayor asked if Seifert had been served with a copy of the petition and Seifert's attorney said, "No." Mayor Rennels obviously did not regard the conduct of Seifert or his attorney during the meeting as an "intentional relinquishment" of Seifert's right to service, since he stated the City would probably be sued regardless of which way he ruled. Moreover, Bruce Kelsey, the City attorney, testified that Seifert's attorney told him right after the vote that the mayor's ruling that the protest petition was valid was improper. Additionally, the fact that Seifert and his attorney found out about the protest petition only a few minutes before the meeting must be taken into account. The trial court's ruling on the waiver issue was not contrary to the manifest weight of the evidence.

■ Finally, intervenors argue that, even if their protest petition was insufficient, the trial court should not have declared that the property had been validly rezoned, but instead should have permitted the City council to reconsider the matter, thus giving intervenors a chance to remedy the deficiencies in the petition. Under section 3—11—17 of the Code, however, the zoning amendment proposed by Seifert needed five votes to pass, and it received five votes. We cannot, therefore, quarrel with the trial court's conclusion that Seifert's property was validly rezoned. While intervenors argue that some of the council members may have voted differently on the amendment had they realized five votes rather than six were necessary for pas-

sage, they presented no evidence to the trial court in support of this theory.

Because of our disposition of this matter, it is unnecessary to resolve Seifert's contention that the protest petition was invalid because it was not properly notarized. The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT, P.J., and GEIGER, J., concur.