In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-4002

WILLIAM G. CABRERA,

*Petitioner-Appellee,*

*v.*

CHARLES L. HINSLEY, WARDEN,*

*Respondent-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 2990—**Joan H. Lefkow**, *Judge.*

ARGUED JANUARY 9, 2003—DECIDED MARCH 31, 2003

Before RIPPLE, ROVNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* The district court granted
William G. Cabrera's petition, pursuant to 28 U.S.C. § 2254,
for a writ of habeas corpus as to convictions in the circuit
court of Cook County, Illinois, for burglary, robbery, and
murder. The State appeals.

The present petition concerns convictions in 1983, as a
result of which Cabrera received sentences of 60 years

---

* Our docket was modified on January 6, 2003, to reflect that
Warden Charles L. Hinsley, and not Warden George C. Welborn,
now has custody of Mr. Cabrera.

imprisonment for murder and 14 years each for robbery and burglary, the latter two reduced to 7 years by the Illinois Appellate Court. *People v. Cabrera*, 480 N.E.2d 1170 (Ill. App. 1985). All sentences run concurrently. In addition, Cabrera is serving a natural life sentence for an unrelated murder conviction. Because of the separate murder conviction, the relief in this case was conditioned on "the invalidation of the other, presumptively lawful, sentences authorizing his continued confinement."

The evidence at trial showed that on the night of February 10, 1981, the office of the Assyrian National Foundation in Chicago was broken into, money was stolen, and Yoel A. Keena, a 74-year-old man staying as a guest at the Foundation, was killed by strangulation and battery with a blunt instrument. At the crime scene, detectives found a receipt for traveler's checks issued in Keena's name. Later, the detectives learned that the checks were used to purchase clothing at a store in Chicago the next day. They questioned Derrick Moore, the assistant sales manager of the store, and learned that three men had come into the store at about 8 p.m. on February 11. A man later identified as Ruben Lopez, using Keena's traveler's checks, purchased a red jacket, a white shirt with a Popeye logo, and a necktie. Moore saw the men go into another store and emerge with more merchandise. On February 23, Moore looked through police mug shots and identified a photograph of Cabrera as one of the men with Lopez when he cashed the check. The police arrested Cabrera at his home without a warrant, and a search of his home at the time of his arrest came up dry. Cabrera waived his Miranda rights, however, and gave a series of contradictory statements.

With the consent of his mother and sister, the police searched Lopez's apartment, where a shirt with a Popeye logo was found. They also found an identification card that Moore (the fellow from the store) said Lopez used in

cashing the traveler's checks. Later the red jacket was found as well.

On February 26 Cabrera made another statement, telling the detectives that he and Lopez had entered the Foundation through a broken window. Lopez told Cabrera to search the front of the building. Cabrera found a metal cash box, which he pried open. He took the $40 which was in the box. While Cabrera was in the front office, Lopez went to the back, where he found Keena. Cabrera saw Lopez strike Keena twice. Cabrera then searched Keena's pockets, where he found the traveler's checks. Lopez took the checks and Cabrera kept the $40. After making this statement, Cabrera consented to a search of his apartment, where the police found two pairs of pants Lopez had bought for him. Cabrera was convicted of murder, robbery, and burglary.

After exhausting his state court remedies, Cabrera filed the present petition, which included the two claims before us: whether probable cause existed for Cabrera's warrantless arrest (which led to several incriminating statements) and whether the prosecution proved beyond a reasonable doubt that he was guilty of burglary. The Illinois courts found that probable cause existed for the arrest and that the evidence supported the burglary conviction. As we said, the district court conditionally granted the writ.

Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) under which this petition was brought, provides that habeas relief may not be granted unless the state court proceeding

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

However, Cabrera's claim regarding his arrest faces a preliminary hurdle. Fourth Amendment claims are subject to the strictures set out in *Stone v. Powell*, 428 U.S. 465 (1976). And those claims, we have recently said, are outside the scope of the statute:

> The AEDPA's changes to § 2254(d) apply only to cases within the scope of § 2254(a) . . . and *Stone* is based on an interpretation of § 2254(a) that treats inaccurate administration of the exclusionary rule as outside the scope of that statute.

*Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002).

*Stone* limited the role of the federal courts in evaluating Fourth Amendment claims of state prisoners who, relying on the exclusionary rule, contend that allegedly unconstitutionally seized evidence should not have been used against them. The Court noted that the exclusionary rule, whose purpose is deterrence of illegal police conduct, actually hampers the central purpose of a criminal trial, which is determining the guilt or innocence of a defendant. The Court reasoned that in the context of habeas petitions, the benefit of the exclusionary rule is minimal compared to the substantial societal costs of applying it. Therefore, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." At 494. It sounds simple but has, in fact, caused considerable consternation over what exactly "full and

fair" means.[1] The only help in *Stone* is a footnote to a prior case: "Cf. *Townsend v. Sain*, 372 U.S. 293 (1963)." And of course the value, generally, of "Cf." citations is often only revealed in the eye of the beholder.

Recently, we have waded again into the debate in an attempt to clarify some of our earlier cases. Our traditional formulation was that a petitioner had a full and fair opportunity to litigate if

> (1) he has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of his fourth amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and (3) applied the proper constitutional case law to the facts.

*Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992). This test spawned many arguments, including one that the litigation was "full and fair" only if the state court decided the issue correctly. This erroneous interpretation of *Stone* was pretty clearly sent packing by our decision last year in *Hampton*. In *Hampton* we observed that the *Pierson* approach nullifies the holding of *Stone* and leads to collateral relief whenever the search violates the fourth amendment. Even an egregious error would not by itself justify habeas relief:

> [A] blunder, no matter how obvious, matters only in conjunction with other circumstances that imply re-

---

[1] *See, e.g.*, *Janecka v. Cockrel*, 301 F.3d 316 (5th Cir. 2002); *Sanna C. DiPaolo*, 265 F.3d 1 (1st Cir. 2001); *Machacek v. Hofbauer*, 213 F.3d 947 (6th Cir. 2000); *Ortiz-Sandoval v. Gomez*, 81 F.3d 891 (9th Cir. 1996); *Willett v.Lockhart*, 37 F.3d 1265 (8th Cir. 1994); *Capellan v. Riley*, 975 F.2d 67 (2d Cir. 1992); *Boggs v. Bair*, 892 F.2d 1193 (4th Cir. 1989); *U.S. ex rel. Petillo v. New Jersey*, 562 F.2d 903 (3d Cir. 1977).

fusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment.

296 F.3d at 564.

Unsatisfied by this formulation, the State wants us to take this opportunity to further clarify the standard. The concern is that *Hampton*'s focus continues to be on the quality of the hearing. The State says that a focus on the quality of the hearing cannot be what *Stone* envisioned; rather, the exception must turn on whether the State provides a mechanism under which to litigate a Fourth Amendment claim. If it does, *Stone* precludes habeas review.

Unlike the State, we do not read *Hampton* as implying federal courts must examine in any significant detail the quality of the hearing. *Quality*, after all, is a word which can lead us right back to confusion as to whether the state judge had to arrive at the right decision in order for the hearing to pass muster. But it is true that *Hampton* stops just short of what the State urges. *Hampton* means that even if the State provides a mechanism under which to litigate a claim, *Stone* would not block habeas review if the mechanism was in some way a sham. For instance, *Stone* would not block habeas review if the judge had his mind closed to the necessity of a hearing, or was bribed, or decided, as *Hampton* says, that probable cause is not required in Illinois, or was sleepwalking (another example from *Hampton*), or in some other obvious way subverted the hearing. *Hampton* does not mean, however, that federal courts will examine whether the judge seemed to have done some quality preparation for the hearing or had a perfect understanding of the fine points of search and seizure law. Absent a subversion of the hearing process, we will not examine whether the judge got the decision right. But we continue to believe that we would be wrong to close our eyes entirely to possible abuses and to

say simply that *Stone* applies if the State allows motions to suppress evidence to be brought, never mind that a particular judge undermined the process in some disturbing way. In short, "full and fair" guarantees the right to present one's case, but it does not guarantee a correct result.

We also note in passing that Cabrera's case is an example of *Stone*'s concern with limiting the exclusionary rule to its intended purpose of deterring police misconduct. Cabrera's crime was committed 22 years ago, in 1981; he was convicted in 1983. One could certainly argue that the deterrent effect of overturning his 19-year-old conviction is outweighed by the damage to society which could flow from reopening the suppression hearing issues which were resolved so long ago. Viewed from this perspective, our case illustrates what *Stone* was talking about when it said that the exclusionary rule "if applied indiscriminately . . . may well have the opposite effect of generating disrespect for the law and administration of justice." At 491.

Applying the *Hampton* standard to this case, we find that Cabrera had a full and fair opportunity to litigate his claim that his arrest was illegal. He raised the issue in a suppression hearing prior to trial; the Illinois Appellate Court, *Cabrera*, 480 N.E.2d 1170, and the Illinois Supreme Court, *People v. Cabrera*, 508 N.E.2d 708 (1987), also considered the issue. There is no indication that these courts were careless of Cabrera's right to present his claim. Cabrera contends that the fact that the basis of the decision changed from one court to another shows that the determinations did not meet the test for a full and fair hearing. Particularly, he points out that the Illinois Supreme Court assumed that the police were aware of his criminal record, a finding he says the evidence did not support. Whether there was anything in the record which would allow the inference that the police knew of

his record is subject to debate. What is clear, however, is that a finding that there was, even if erroneous, does not support a piercing of *Stone* to send a federal court sifting through the evidence to see whether the Illinois courts were, in its view, correct in determining that probable cause existed.

The other issue before us—whether the evidence is sufficient to sustain the burglary conviction—is within the ambit of § 2254(a) and (d), which means that habeas relief may be granted only if the state court proceeding resulted in a decision which was contrary to, or an unreasonable application of, established federal law as determined by the Supreme Court, or was based on an unreasonable determination of the facts.

Before we launch into an analysis of this issue, we admit some bewilderment about being asked to evaluate the burglary conviction because, on the surface at least, it would seem to be an exercise in futility. We understand that the Supreme Court determined in *Benton v. Maryland*, 395 U.S. 784 (1969), that a habeas petition is not made moot by the existence of a concurrent sentence (which would mean that release from custody is not possible even were the petition granted). But here, Cabrera has three other concurrent sentences—two murder convictions and a robbery conviction. If he had prevailed on his Fourth Amendment argument in this petition, one of the murder convictions, the robbery conviction, and the burglary conviction would all have been set aside. If that had happened, only one conviction would have stood between him and freedom, making it reasonable to consider the Fourth Amendment claim in the current petition. But it is also true that if he had prevailed on his claim that his arrest was invalid, there would be no reason to discuss the burglary conviction separately. And now that he has failed (before us) on the Fourth Amendment claim,

it is hard to see, in the real world, how setting aside his burglary conviction does him any good. No doubt he has served his time. His was a 7-year sentence imposed 20 years ago. And the possibility of realistic collateral consequences from the burglary conviction are remote at best and probably, more accurately, nonexistent.

What we find even more bewildering is what the State has to gain by resisting this claim. The claim is highly fact-specific, and granting the writ in this case seems unlikely to change the course of Illinois law.

To explain: In Illinois, burglary is defined as knowingly entering a building "with the intent to commit therein a felony or theft." The information (the charging document in Illinois) alleged that Cabrera "committed the offense of burglary in that he, without authority, knowingly entered into a building, to wit: the dwelling of Yoel Keena with the intent to commit the offense of robbery therein." Robbery, then, is the felony that Cabrera is charged with intending to commit when he entered the building. The problem is that the building was not a residential building and there was no evidence that Cabrera and Lopez knew Keena or anyone else was living there when they broke in. Therefore, Cabrera's argument is that he could not have had the intention to commit robbery when he entered the building, and without that intention, he cannot be guilty of burglary as it was charged. During the trial, the prosecutor asked that the jury be instructed that Cabrera could be convicted of burglary if he intended to enter the building with the intent to commit robbery *or theft*. The judge refused—we can't understand why—and the jury was instructed that a person commits burglary when he enters a building to commit robbery. The jury was instructed that robbery was the taking of property from a person or the presence of another by the use of force or threatened force. The jury convicted Cabrera of burglary (as well as robbery and murder).

Cabrera's constitutional claim in the present petition is that the evidence of his intent to commit robbery was insufficient to sustain the burglary conviction. In fact, he says it was nonexistent.

The district court granted the petition with regard to this claim, saying that the decision of the state court was "either 'contrary to' *Jackson [v. Virginia*, 443 U.S. 307 (1979)], or, if we assume that its standard was functionally equivalent to *Jackson*'s, it was an unreasonable application of it."

The *Jackson* standard is that a petitioner is "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." At 324. The Illinois Supreme Court said that the determination of the jury "will not be disturbed on review unless the evidence is so improbable as to cast reasonable doubt on the guilt of the defendant." 508 N.E.2d at 716. Is the latter "contrary to" the former? Cabrera does not explain in any detail how the two are meaningfully different. The Illinois court was using the right burden of proof even though the phrase from *Jackson* was not parroted. We do not see this standard as contrary to *Jackson*.

So the question becomes whether the determination by the Illinois Supreme Court that the evidence was sufficient to sustain the burglary conviction is an unreasonable determination of the facts. The Illinois courts recognize that evidence of intent is usually not direct. For that reason, it may be proved circumstantially by inferences reasonably drawn from the circumstances of the defendant's conduct. *People v. McKinney*, 631 N.E.2d 1281 (Ill. App. 1994). Those circumstances include "the time, place and manner of entry into the premises, the defendant's activity within the premises, and any alternative explanations offered for his presence." *People v. Richardson*, 470 N.E.2d 1024, 1027 (1984).

The application of this principle can be seen in *People v. Zuniga*, 425 N.E.2d 1094 (Ill. App. 1981). The defendant entered a church basement through a broken window. A priest noticed the broken window and entered the church, where he encountered the defendant. The defendant struck the priest with a metal rod and demanded his money. Zuniga made the argument which Cabrera makes here—that he did not enter the church with the intent to commit robbery—and the court found that the requisite intent could be inferred by what happened inside the church. The issue was one for the jury.

On the other hand, intent could not be inferred from the defendant's actions in *People v. Toolate*, 461 N.E.2d 987 (1984). Toolate was charged with burglary with intent to commit a felony—in this case rape. The sole issue was whether he intended to commit rape when he knowingly and without authority entered a woman's home. Because he did nothing inside the home that pointed toward rape, the court found the evidence insufficient:

> Strange as Toolate's behavior was, the record contains no evidence whatever that he used force against or that he intended to have sexual intercourse with Debbie Sue. The best evidence that Toolate did not intend to engage in sexual activity by force is that there was no force and no threat of force, no sexual activity and no threats, promises, or suggestion of any kind. The defendant had no weapon. He did not harm or threaten to harm either Debbie Sue or the children. There was no sexual contact here. Presumably Debbie Sue was clad in no more than night-clothes, but the record is silent on this point. Whatever she was or was not wearing, Toolate did not ask her to undress, and did not attempt to undress her. He was fully clothed, including a jacket, and he did not remove any of his own clothing. He did not caress or fondle her, or begin any sexual activity.

At 989.

In Cabrera's case, on the other hand, there is unquestionably evidence of robbery. From that, a jury could reasonably conclude that Cabrera and Lopez entered the building with the intent to commit any number of offenses, including robbery.

On this issue, we decide only whether the Illinois Supreme Court decision was based on an unreasonable determination of the facts in light of the evidence presented at trial. We cannot say it was. Therefore, the decision of the district court is REVERSED and the case is REMANDED to the district court for entry of an order denying Cabrera's petition for a writ of habeas corpus.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*