**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 7, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEE THAO,

Defendant-Appellant.

No. 07-8066
(District of Wyoming)
(D.C. No. 07-CR-102-J)

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEE VANG LOR,

Defendant-Appellant.

No. 07-8069
(District of Wyoming)
(D.C. No. 07-CR-102-J)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA,** Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **McCONNELL,** Circuit Judge.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In a two-count indictment filed on March 22, 2007, in the United States District Court for the District of Wyoming, Lee Thao and Lee Vang Lor were charged with conspiring to possess methamphetamine with an intent to distribute and, in a second count, with possessing methamphetamine with an intent to distribute. Both defendants pled not guilty and each then filed a motion to suppress. In those motions each defendant sought to suppress all statements made after they had been "illegally" detained, as well as all evidence seized from their vehicle, which had been stopped by a Wyoming Highway Trooper on Highway 80 in Wyoming. These motions were heard on May 31, 2007. At that hearing, the United States called as witnesses four members of the Wyoming Highway Patrol and each of the defendants also testified. At the conclusion of that hearing the district court denied both motions from the bench and orally gave his reasons for so doing. On June 4, 2007, both defendants entered a conditional plea of guilty to both counts in the indictment, reserving their right to appeal the district court's denial of their motions to suppress. On August 30, 2007, Thao was sentenced to imprisonment for 120 months on each count, to be served concurrently, and Lor was sentenced to imprisonment for 121 months, both counts to be served concurrently. Each has filed a timely notice of appeal. These two appeals were separately filed, briefed, and orally argued. We consolidate them for the purposes of this Order and Judgment.

On March 13, 2007, at about 9:52 a.m., Trooper Ben Peech of the Wyoming

-2-

Highway Patrol saw a silver-colored sport utility vehicle passing a semi-tractor trailer on Highway 80 in Wyoming. He "clocked" that vehicle as going 79 M.P.H. in an area where the speed limit was set and posted at 75 M.P.H. The Trooper proceeded to stop the speeding vehicle which bore Minnesota license plates and was traveling east on Highway 80. The Trooper then exited his vehicle and walked toward the driver's side of the vehicle he had just stopped. The driver of the speeding vehicle was Lor, and Thao was the only passenger in the vehicle. The Trooper told Lor that he had been stopped for speeding at 79 M.P.H., whereupon Lor stated that he had his cruise control set at 75 M.P.H but that he perhaps was going faster than 75 when he was passing a tractor-trailer. The Trooper saw no luggage in the car but did note a laundry basket filled with clothes.

At this point, the Trooper asked Lor for his driver's license, car registration, and proof of insurance. Lor's hands were noticeably shaking. It later developed that Lor initially gave the Trooper a false name. Thao removed a rental agreement from the glove compartment and his hand was visibly shaking as he handed the rental agreement to Lor. Next, the Trooper asked Lor to accompany him to the patrol car where he was going to issue Lor a warning ticket for speeding. The Trooper noticed that the silver SUV that Lor had been driving had been rented in Minnesota by a third party who was a resident of Wisconsin. Once the Trooper and Lor were seated in the patrol car the Trooper ran a check on

-3-

the driver's license given him by Lor. While the two were talking, Lor told the Trooper that he was not authorized to drive the vehicle. Lor told the Trooper that he and Thao had been gambling in Reno, Nevada and were returning to Minnesota. The Trooper testified at the suppression hearing that the odometer indicated more mileage than would a trip to Reno, and that such suggested to him that the two might have been in California. According to the Trooper, Lor was at all times very nervous and edgy while in the patrol car. Further, the Trooper noticed that as he was questioning Lor in the patrol car, Thao, who had remained in the SUV, was constantly turning around and looking at Lor and the Trooper. The Trooper then asked Lor to remain in the patrol car while he confirmed that Thao was the person authorized to drive the vehicle. The Trooper left his patrol car and walked to the SUV and then spoke with Thao who confirmed that under the rental agreement he was the only authorized driver, but stated that he had asked Lor to drive because he was tired. The Trooper asked Thao, *inter alia,* where he had been. Thao, after pausing, stated that he and Lor had been to Reno to visit friends. By that point in time the Trooper testified that he was strongly suspicious that the two men were drug couriers.

The Trooper then returned to his patrol car, gave Lor a warning ticket, and advised him to keep his speed down. The Trooper asked Lor if he would answer more questions and Lor consented. The two next returned to the silver SUV where the Trooper inquired as to whether he could ask Thao a few more

questions, and Thao agreed to do so.

At about 10:07 a.m. the Trooper requested back-up.  The Trooper then asked additional questions of both Lor and Thao.  Thao was asked, *inter alia,* if there were any contraband or guns in the vehicle.  Thao denied having any drugs or guns in the vehicle.  The Trooper then asked if he could search the vehicle and Thao said the Trooper could make such a search. After giving his permission, and, before any search had started, Thao asked if he could have refused to give permission to search the car, and the Trooper said, "yes," he could "absolutely refuse."  Thao then recanted and said he did not want the car to be searched.  The Trooper acknowledged Thao's refusal that the car be searched, but added that he was going to detain him and Lor pending the arrival of a "sniffing dog."  After they had been informed that they were going to be temporarily detained, the Trooper contacted dispatch and requested that a dog be brought to the scene.  The Trooper then told the two that a canine was en route and would be on the scene in 15 to 20 minutes.  *See United States v. Villa-Chaparro*, 115 F.3d 797, 802 (10th Cir. 1997) (upholding detention founded upon reasonable suspicion where 43 minutes elapsed from initial stop to arrival of dog).  At that time Thao told the Trooper to go ahead and search the SUV.  To confirm the verbal consent to search, the Trooper wrote a consent to search form which was read to both Lor and Thao and they both signed it.  So, at about 10:14 a.m. the Trooper began to search the SUV.  Shortly thereafter, the canine, "Todd," arrived and sniffed but

-5-

did <u>not</u> alert. It later developed that Todd had been trained to alert for powder methamphetamine, but not for crystal methamphetamine! In the meantime another Trooper located numerous receipts in the glove compartment indicating that the SUV had been in Stockton, California. As the Troopers continued their search they observed signs of "tooling" on two phillips head screws holding the molding on the rear hatch. Once the rear hatch was removed they found two large plastic bags containing about two pounds of crystal methamphetamine and approximately one-half pound of MSA, a dilutant or cut of methamphetamine. As indicated, both Lor and Thao testified at the suppression hearing and they stated that after they gave their written consent to search, and while the search was in progress, Thao yelled "stop" and waved his hands towards the Troopers as they continued their search. However, each of the four Troopers at the scene testified that neither Lor nor Thao made any attempt to verbally revoke their written consent.

On appeal, the defendants raise two issues: (1) Were they "unreasonably detained" in violation of the Fourth Amendment prohibition against "unreasonable searches and seizures," and (2) was their written consent to search their vehicle "voluntary," or not. The two issues are interrelated, because if their detention was unreasonable, then their "consent" was involuntary.

In reviewing a district court's denial of a defendant's motion to suppress, we view the evidence in a light most favorable to the government, and accept the

district court's finding of facts unless clearly erroneous. However, we review *de novo* the ultimate question of "reasonableness" under the Fourth Amendment. *United States v. Engles,* 481 F.3d 1243, 1245 (10th Cir. 2007); *United States v. Herrera*, 441 F.3d 1238, 1242 (10th Cir. 2006).

Our study of the record leads us to conclude that, under a "totality" of the evidence, defendants' "detention" was not "unreasonable." *United States v. Arvizu*, 534 U.S. 266, 272 (2002); *United States v. Soto*, 988 F.2d 1548, 1555 (10th Cir. 1993). The Trooper who stopped the vehicle in question testified that he, early on, so to speak, had a suspicion that the defendants were engaged in unlawful conduct in addition to their speeding. The "stop" incidently is not challenged on appeal. Thus, our question is whether the Trooper's "suspicion" was reasonable under the circumstances. *Terry v. Ohio*, 392 U.S. 1, 19 (1968).

We conclude that there was reasonable suspicion. Neither defendant alleges that Trooper Peech's first round of questioning was unreasonable. Lor, in his opening brief, argues only that all of the information discovered and observed by Trooper Peech, at the point at which he searched the car, did not amount to reasonable suspicion. *See, e.g.*, Lor Br. 16. In his reply brief, Lor narrows his argument, claiming that he did not validly consent to Trooper Peech's second set of questioning. Lor Reply Br. 1–2. Thao argues only that Trooper Peech improperly detained him during the second set of questioning. *See* Thao Br. 8, 16 ("When the trooper issued a warning and finished his conversations with Lor the

-7-

consensual nature of the traffic stop ended.").  But before Trooper Peech began the second round of questioning, referred to as unreasonable by Thao, he had developed reasonable suspicion to detain them, based on the facts discussed below.

Trooper Peech identified several factors that provided grounds for reasonable suspicion:  (1) the 500-700 unaccounted miles for a quick gambling trip from Minneapolis to Reno and back to Wyoming, when they were stopped; (2) the driver, Lor, was not authorized to drive the vehicle; (3) the SUV was rented by a third party but this person was not present on the trip; (4) the statement that the third party lived in Minnesota, but the document indicated he was from Wisconsin; (5) unusual and increasing nervousness; (6) inconsistent stories about visiting with family and friends in Reno, vis-a-vis gambling; and (7) the lack of luggage in the SUV.  Collectively, these facts justified the defendants' detention until they both consented to a search of the vehicle.  The most incriminating factor in this list is the discrepancy between Thao and Lor's description of who they knew and what they did while in Reno—inconsistencies which were apparent after the Trooper's first round of questioning.  Lor informed Trooper Peech that they knew no one in Reno, while Thao stated that they were visiting friends and family.  "[I]mplausible or contradictory travel plans can contribute to a reasonable suspicion of illegal activity."  *United States v. McRae*, 81 F.3d 1528, 1535 (10th Cir. 1996); *see also United States v. Zubia-Melendez*,

263 F.3d 1155, 1163 (10th Cir. 2001) (defendant's claim that he and the driver had stayed together at a hotel contradicted the driver's claim that he had stayed at home the night before contributed to reasonable suspicion). Particularly in light of the short time period in which Thao and Lor went to and from Reno and the divergence in mileage between the what the defendants' trip should have taken and what the odometer read, these inconsistent statements supported reasonable suspicion.

Having concluded that there was no "unreasonable detention" on the part of the Trooper, such eliminates "unreasonable detention" as a possible ground for holding that defendants' consent was involuntary. On appeal, however, the defendants argue that their consent was involuntary. We do not agree. As noted, initially a verbal consent to search was given by Thao, who, when informed by the Trooper that he could have refused to consent, withdrew his consent. When Thao again verbally consented to a search, the Trooper, understandably, had it reduced to writing. On appeal, there is a suggestion that, after the dog did not alert, Thao had attempted to withdraw his consent again, this time by yelling, "Stop." However, several Troopers testified at the suppression hearing that neither defendant ever asked the Troopers to stop their search. In this regard in its ruling from the bench the district court noted that the Troopers' testimony was that the defendants made no "effort to stop the search."

In connection with the testimony given at the suppression hearing, the

district court commented generally on the "credibility" of the various witnesses as follows:

> However, at the outset I would be less than candid . . . if I failed to say that I was more impressed with the truthfulness and the testimonies of the sworn peace officers than I am of an individual who has had numerous encounters in a confrontational situation with peace officers all over and who is a convicted felon in terms of his record. And there are other things that I – matters of demeanor that the Court absorbed during the course of the testimony of both of the defendants in this case.

In sum, based on the record before us, we conclude that the detention was reasonable and the consent to search was voluntary.

Judgment affirmed.

Entered for the Court


Robert H. McWilliams
Senior Circuit Judge