In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3504

DAVID C. BROCK,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 07 C 632—**Larry J. McKinney**, *Judge.*

ARGUED JANUARY 16, 2009—DECIDED JULY 22, 2009

Before BAUER, FLAUM and WOOD, *Circuit Judges*.

BAUER, *Circuit Judge*. After police searched two of his residences, David C. Brock was convicted of possessing, with the intent to distribute, methamphetamine and cocaine, and of being a felon in possession of a firearm. Several years later, Brock brought a motion under 28 U.S.C. § 2255, claiming to have located a previously unavailable witness, Reginald Godsey, who was prepared to testify that the officers coerced him into

consenting to a search of the house he and Brock shared. Therefore, Brock claims, the search was non-consensual and violated his Fourth Amendment rights, and the evidence found in that house must be suppressed, with his sentence vacated or reduced accordingly. The district court denied Brock's motion—a decision we affirm.

## I. BACKGROUND

On April 9, 2002, federal and state law enforcement officers executed a federal search warrant for firearms at Brock's residence, located at 3375 N. Payton Avenue in Indianapolis. The search revealed approximately three pounds of methamphetamine, two pounds of cocaine, one-quarter pound of marijuana, fourteen guns, ammunition, and $35,000 in cash. The officers also found utility bills indicating that Brock paid for at least some of the utilities at 3381 N. Payton Avenue, the house immediately next door, since February 2001. Officer Miller, one of the officers executing the warrant, had training and experience enough to know that drug dealers commonly maintain stash houses to avoid storing all of their inventory in one location.

Brock was not home at 3375 N. Payton when the search was conducted. The officers found Godsey instead. According to the officers, Godsey informed them that he and Brock each rented a room next door at 3381 N. Payton. Godsey stated that Brock used 3381 N. Payton as a stash house for drugs and that Brock kept a safe in his bedroom that currently contained several pounds of methamphetamine. Godsey watched both houses for

Brock. Godsey consented to a search of his bedroom in 3381 N. Payton and gave the officers a key to the house. The officers found a shotgun in plain view in a common area of the house and some drugs in Godsey's bedroom as well as papers linking Brock to 3381 N. Payton. Also from a common area, a police narcotics dog alerted to the southwest section of the house.

Based on all this information, a state search warrant was obtained and executed for 3381 N. Payton, still on April 2, 2002. A search of Brock's bedroom uncovered twelve pounds of methamphetamine, eight ounces of cocaine, seven guns, and ammunition. Brock was indicted and convicted on six counts: three for the methamphetamine, cocaine, and firearms found at 3375 N. Payton and three for the methamphetamine, cocaine, and firearms found at 3381 N. Payton. We affirmed the convictions. *United States v. Brock*, 417 F.3d 692 (7th Cir. 2005); *United States v. Brock*, 433 F.3d 931 (7th Cir. 2006).

In November 2006, more than three years after Brock was convicted, Brock's family located Godsey, whose location was previously unknown to the government or Brock. Godsey signed a declaration that he only consented to the search of 3381 N. Payton because the officers held a gun to his head and threatened him with sixty years in prison. Brock then brought this § 2255 motion, which the district court denied.

## II. DISCUSSION

Brock's fundamental argument on appeal is that the newly discovered and previously unavailable evidence

requires, at a minimum, an evidentiary hearing to determine whether Godsey's consent was coerced. If it was, Brock claims, the search of 3381 N. Payton violated Brock's Fourth Amendment rights and the evidence found therein must be suppressed. Brock contends that the Supreme Court's limitation on the exclusionary rule in collateral attacks, described in *Stone v. Powell*, 428 U.S. 465 (1976), does not apply. The government responds that Brock's claim is barred by *Stone*, was procedurally defaulted, and is irrelevant because the search of 3381 N. Payton was proper under the independent source doctrine.

"We review the district court's conclusions of law de novo and its denial of a motion for an evidentiary hearing for abuse of discretion." *Almonacid v. United States*, 476 F.3d 518, 520-21 (7th Cir. 2000).

## A.  Limits to the Exclusionary Rule

Brock claims that *Stone* does not apply to § 2255 motions because *Stone* addressed collateral petitions by state prisoners under 28 U.S.C. § 2254 while § 2255 is for federal prisoners. He also argues that he has been denied "an opportunity for full and fair litigation of [his] Fourth Amendment claim," the prerequisite to the *Stone* bar. *Stone*, 428 U.S. at 494. The government argues that *Stone* is equally applicable to federal and state prisoners, and that Brock received an opportunity for full and fair litigation of his claim so that *Stone* applies.

The exclusionary rule is not required by the Constitution; it is "a judicially created means of effectuating the

rights secured by the Fourth Amendment." *Stone*, 428 U.S. at 482. The rule is designed to deter violations of the Fourth Amendment "by removing the incentive to disregard it." *Id.* at 484 (quoting *Elkins v. United States*, 364 U.S. 206, 217 (1960)). It "is not a personal constitutional right" and "is not calculated to redress the injury to the privacy of the victim of the search or seizure, for any '[r]eparation comes too late.'" *Stone*, 428 U.S. at 486 (quoting *Linkletter v. Walker*, 381 U.S. 618, 637 (1965)). Instead, "[a] person whose rights have been violated by a search can be remitted to a suit against the police for committing a constitutional tort." *United States v. Sims*, 553 F.3d 580, 583-84 (7th Cir. 2009). In sum, "[t]he rule is calculated to prevent, not to repair." *Stone*, 428 U.S. at 484 (quoting *Elkins*, 364 U.S. at 217).

Because the exclusionary rule "deflects the truthfinding process and often frees the guilty," *Stone*, 428 U.S. at 490, it "has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* at 486-87 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)); *see Herring v. United States*, 129 S. Ct. 695, 700 (2009) ("benefits of deterrence must outweigh the costs"). For example, the rule does not apply during grand jury proceedings, or when evidence is used to impeach a defendant's testimony, or when officers acted in good faith reliance on a faulty warrant. *Stone*, 428 U.S. at 487-88 (citations omitted); *United States v. Leon*, 468 U.S. 897, 922 (1984). Determining whether the exclusionary rule may be invoked in this situation requires "weighing the utility of the exclusionary rule against the costs of ex-

tending it to collateral review of Fourth Amendment claims." *Stone*, 428 U.S. at 489.

The Supreme Court conducted this weighing analysis in *Stone* and concluded that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494. This is because the added deterrent effect from law enforcement authorities "fear[ing] that federal habeas review might reveal flaws in a search or seizure that went undetected at trial and on appeal" is minimal and "would be outweighed by the acknowledged costs to other values vital to a rational system of criminal justice." *Id*. at 493-94. This Court has determined that the principles of *Stone* apply equally to § 2255 motions. *Owens v. United States*, 387 F.3d 607, 609 (7th Cir. 2004).

Brock argues that he was not provided an opportunity for full and fair litigation because Godsey's key testimony was not available until recently. *Stone* did not explain what an opportunity for full and fair litigation requires and the term has "caused considerable consternation." *Cabrera v. Hinsley*, 324 F.3d 527, 530-31 (7th Cir. 2003). "The only help in *Stone* is a footnote to a prior case: 'Cf. *Townsend v. Sain*, 372 U.S. 293 . . . .' And of course the value, generally, of 'Cf.' citations is often only revealed in the eye of the beholder." *Cabrera*, 324 F.3d at 531; *see Turentine v. Miller*, 80 F.3d 222, 224 n.1 (7th Cir. 1996) (noting that "[a]t least one court . . . has stated that

*Stone* did not necessarily intend to incorporate the full extent of the Townsend Court's definition of full and fair hearing" (citing *Palmigiano v. Houle*, 618 F.2d 877, 881 (1st Cir.), *cert. denied*, 449 U.S. 901 (1980))).

The possibly relevant language in *Townsend* states: "Where newly discovered evidence is alleged in a habeas application, evidence which could not reasonably have been presented to the state trier of facts, the federal court must grant an evidentiary hearing. Of course, such evidence must bear upon the constitutionality of the applicant's detention . . . ." 372 U.S. at 317. It is questionable as to whether Brock could have located Godsey prior to the suppression hearing or at some point during the trial or direct appeal had he exerted greater effort. But even if Godsey's testimony could not reasonably have been presented earlier, so that it would truly be newly discovered evidence, the evidence, to be relevant under *Townsend*, must relate to the constitutionality of Brock's detention. *Id.*

Brock's argument that his Fourth Amendment rights were violated is a constitutional claim, but does not bear upon the constitutionality of Brock's detention.

> [A] person imprisoned following a trial that relies, in part, on unlawfully seized evidence is not "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The *seizure* may have violated the Constitution, but the *custody* does not, because the exclusionary rule is a social device for deterring official wrongdoing, not a personal right of defendants.

*Hampton v. Wyant*, 296 F.3d 560, 562-63 (7th Cir. 2002); *see Leon*, 468 U.S. at 906 ("use of fruits of a past unlawful search or seizure 'work[s] no new Fourth Amendment wrong.'" (quoting *Calandra*, 414 U.S. at 354)). Simply put, Brock's detention is no less constitutional even if it turns out that the Fourth Amendment was violated in effectuating it.

Brock's second argument is that this Court has summarized the opportunity for full and fair litigation of a Fourth Amendment claim by stating that it "guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera*, 324 F.3d at 532. Brock claims that he was denied the right to present his case because he has not been able to introduce this new evidence. But, read in context, *Cabrera's* "right to present one's case" simply refers to the right to have a judge listen to and consider the evidence a party actually presents at trial. It is the right to have a judge who has not closed his mind to the issues, is not bribed or sleepwalking, and is not "in some other obvious way subvert[ing] the hearing." *Id.* at 531. *Cabrera* did not consider whether an opportunity for full and fair litigation requires that the evidence necessary to make the party's best claim be available by the time of trial.

Most importantly, neither of these arguments bears upon the central issue in *Stone* and the one which we must ultimately decide: whether the deterrent benefit of applying the exclusionary rule in a particular situation outweighs the social costs of letting the guilty go free, expending limited judicial resources, and disturbing finality in criminal trials. *Stone*, 428 U.S. at 489-90, 491 n.31 (citation

omitted). The deterrent calculus articulated in *Stone* is not dependent on when evidence surfaces, as long as the trial was administered in a just manner. Police misconduct will not be materially checked by fear that Fourth Amendment violations that go undiscovered during trial, appeal, and the three-year time period to file a motion for a new hearing, Fed. R. Crim. P. 33(b), will be discovered and used in a § 2255 motion, at least when there is no allegation that the officers prevented the defendant from finding the evidence. *See Stone*, 428 U.S. at 493. Any "additional incremental deterrent effect" this might have "would be outweighed by the acknowledged costs to other values vital to a rational system of criminal justice." *Stone*, 428 U.S. at 493-94; *see id*. at 490 ("[T]he physical evidence sought to be excluded is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant.").

Brock makes no claim that his trial or appeals were not fairly administered or that the government prevented him from locating Godsey. His unfortunate circumstance is that, for whatever reason, he did not locate Godsey until it was too late. *Stone* prevents Brock from bringing this § 2255 motion solely on the ground that newly discovered evidence would have triggered the exclusionary rule if presented earlier.

## B.  Independent Source Doctrine

Even if Brock's claim was not barred by *Stone* and an evidentiary hearing revealed that Godsey's consent

was coerced so that the initial search of 3381 N. Payton was conducted in violation of the Fourth Amendment, this would not automatically preclude introduction of the evidence discovered at 3381 N. Payton. In describing the purpose of the exclusionary rule, the Supreme Court has stated that

> the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred. When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.

*Nix v. Williams*, 467 U.S. 431, 443 (1984) (citations omitted).

Typically these so-called independent source doctrine cases involve an illegal search and discovery of evidence followed by a second search conducted after a warrant is obtained. *See Murray v. United States*, 487 U.S. 533, 535-36 (1988); *see also United States v. Markling*, 7 F.3d 1309, 1311-12 (7th Cir. 1993). In *Murray*, the Supreme Court held that evidence originally discovered or seized illegally can be legally rediscovered or reseized and used against the defendant at trial. 487 U.S. at 541-42. In this case, the critical evidence in Godsey's bedroom was initially discovered and seized according to a warrant, making the facts more similar to *Segura v. United States*,

468 U.S. 796 (1984).[1] However, the exclusionary rule would still apply if the warrant was tainted by the previously discovered evidence that was illegally obtained. *Murray*, 487 U.S. at 536-37. To be admissible, the evidence discovered from the second search of 3381 N. Payton must have been discovered independently of Godsey's supposedly coerced statements and consent and the evidence obtained from the first search of 3381 N. Payton.

Deciding whether evidence was obtained from an independent source involves a two-part test. *Markling*, 7 F.3d at 1315. "The first question is whether the illegally obtained evidence affected the magistrate's decision to issue the search warrant." *Id.* (citing *Murray*, 487 U.S. at 542). The heart of this question is whether, taking away any illegally obtained information, the affidavit still demonstrated probable cause. *Markling*, 7 F.3d at 1317.

"[D]etermining whether probable cause exists involves 'a practical, common-sense decision whether, given all the circumstances set forth . . . there is a fair probability

---

[1] It is not clear whether Brock was charged with possessing the shotgun found in plain view during the first search of 3381 N. Payton. Brock does not mention the shotgun on appeal and it seems irrelevant whether Brock was charged with possessing eight versus seven guns recovered from 3381 N. Payton. Also, the shotgun was likely rediscovered during the second search of 3381 N. Payton according to the independent source rule (see below).

that contraband or evidence of a crime will be found in a particular place.'" *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In this case, the affidavit explained that Brock had been previously convicted for dealing cocaine. A substantial amount of drugs, several guns, and a large amount of cash had just been recovered from one of Brock's residences. Utility bills were discovered in 3375 N. Payton linking Brock to 3381 N. Payton, the house immediately next door. And the affidavit noted Officer Miller's experiential knowledge that stash houses are common in the narcotics industry. Finally, "a magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept [and] in the case of drug dealers evidence is likely to be found where the dealers live." *United States v. Reddrick*, 90 F.3d 1276, 1281 (7th Cir. 1996) (quotations and citations omitted). There was more than sufficient evidence to create "a fair probability" that the search would be productive. *Gates*, 462 U.S. at 238.

The second part of this test asks whether the "decision to seek the warrant was prompted by" information gained from the initial illegal activity. *Markling*, 7 F.3d at 1315-16 (quoting *Murray*, 487 U.S. at 542). Here we do not have, nor would we expect, any testimony from the officers or a finding by the district court that the officers would have sought the warrant regardless of the presumptively illegal activity because the allegation of coercion came several years after the trial. Based on the evidence in this case, it would be easy to conclude that the officers would have sought the warrant even without speaking to Godsey or initially searching

3381 N. Payton. Nevertheless, this is a decision for the district court. *Murray*, 487 U.S. at 542-44; *Markling*, 7 F.3d at 1317. We do not need to remand this case, however, because it is already barred by *Stone*.

### III.  CONCLUSION

For the reasons discussed above, we AFFIRM the denial of Stone's § 2255 motion.